# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

CHARNETTA RANKINS o/b/o  :
CABRIA B. RANKINS,

                    :

     Plaintiff,

vs.                      :       CA 05-0704-WS-C

JO ANNE B. BARNHART,    :
Commissioner of Social Security,

                    :

     Defendant.

## REPORT AND RECOMMENDATION

The plaintiff, Charnetta Rankins, brings this action on behalf of her daughter, Cabria Rankins, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying Cabria's application for child's insurance benefits. This action has been referred to the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, and the Commissioner's proposed report and recommendation, the undersigned recommends that the Commissioner's decision denying child's insurance

benefits be affirmed.[1]

The Administrative Law Judge (ALJ) made the following findings:

1.      The claimant was born on September 14, 1987, and is a child under the age of 18, currently 16 years old.

2.      At the age of 16, there is no evidence that the claimant has ever performed substantial gainful activity.

3.      The claimant has had episodic tremulousness, possible complex partial epilepsy, an impairment which is deemed "severe" within the meaning of 20 C.F.R. § 416.924(c).

4.      The claimant's severe impairment has not been of a severity to medically meet or equal the severity of any impairment listed in Part B of Appendix 1 to Subpart P, 20 C.F.R. Part 404 ("Listing of Impairments"). Neither has the claimant's impairment been functionally equivalent to the level of severity contemplated by the listings.

5.      The claimant has not had "extreme" limitation in any areas of functioning or "marked" limitation in two areas of functioning.

6.      Subjective complaints were considered credible only to the extent that they were supported by the weight of the medical and non-medical evidence of record as summarized and discussed in the text of this decision.

7.      The claimant has not been under a "disability," as defined in the Social Security Act and derivative regulations.

(Tr. 27-28)  The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and

---

[1]      The parties filed a joint motion to waive oral argument in this matter on August 1, 2006. (Doc. 15) This motion was granted by order dated August 2, 2006. (Doc. 16)

thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

Prior to February 20, 1990, a child claimant would be found eligible for benefits under the Commissioner's regulations only if he was not performing substantial gainful activity, if his impairment met the duration requirement, and if his impairment was medically equivalent to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 526, 110 S.Ct. 885, 889, 107 L.Ed.2d 967 (1990). The Commissioner's regulations made no inquiries corresponding to the fourth and fifth steps of the adult analysis. *Id.* In *Zebley,* the Supreme Court stated in plain words that "a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working." *Id*. at 529, 110 S.Ct. at 890. The High Court rejected the Commissioner's argument that analysis of child disability claims of the type performed at steps four and five of the adult analysis is not feasible. *See id.* at 539, 110 S.Ct. at 896.

> The fact that a *vocational* analysis is inapplicable to children does not mean that a *functional* analysis cannot be applied to them. An inquiry into the impact of an impairment on the normal daily activities of a child of the claimant's age -- speaking, walking, washing, dressing, feeding oneself, going to school, playing, etc. -- is, in our view, no more amorphous or unmanageable than

> an inquiry into the impact of an adult's
> impairment on his ability to perform "any other
> kind of substantial gainful work which exists in
> the national economy[.]"

*Id.* at 539-540, 110 S.Ct. at 896 (citation omitted).

Following the *Zebley* decision, the Commissioner made wholesale revisions in the regulations addressing child disability claims. The Commissioner began employing a four-step sequential analysis for determining whether a child is disabled. *See* 20 C.F.R. § 416.924(c)-(f). The four steps were as follows: (1) If the child is working and that work is substantial gainful activity, he will be found not disabled regardless of his medical condition or age, education, or work experience; (2) If the child does not have any severe impairment(s) he will be found to be not disabled; (3) If the child has an impairment(s) which meets the duration requirement and is listed in appendix 1, or is equal to a listed impairment, he will be found to be disabled; and (4) If the child has a severe impairment(s) but that impairment(s) does not meet or equal in severity a listed impairment, the impact of the child's impairment(s) on his overall ability to function independently, appropriately, and effectively in an age-appropriate manner is assessed and this individualized functional assessment will be used to decide whether the child has an impairment(s) that would prevent an adult from engaging in substantial

4

gainful activity and, thus, to determine whether or not the child is disabled. *Id.*

The comparable severity standard was eliminated with passage of the Personal Responsibility and Work Opportunity Act of 1996. *See* Pub.L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (directing the Commissioner to eliminate the individual functional assessment set forth in the regulations at 20 C.F.R. §§ 416.924d and 416.924e). This act, which  was signed into law on August 22, 1996, wrought another change in the disability determination process for children.  The 1996 Act provides that "[a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations implementing this definition of disability provide a three-step process for determining eligibility for benefits which is identical to the first three steps of the post-*Zebley* analysis, save with respect to the third step.  The first step still requires the ALJ to determine whether the child is engaged in substantial gainful activity and the second step still requires the ALJ to determine whether the child has a severe impairment or combination of

impairments.  At the third step, the ALJ must determine whether the severe

impairments "*meet, medically equal, or functionally equal the listings*.  An

impairment(s) causes marked and severe functional limitations if it meets or

medically equals the severity of a set of criteria for an impairment in the

listings, or if it functionally equals the listings."  20 C.F.R. § 416.924(d)

(2004) (emphasis in original).

> A child's impairment is recognized as causing "marked and
> severe functional limitations" if those limitations "meet[],
> medically equal[], or functionally equal[] the [L]istings." A
> child's limitations "meet" the limitations in the Listings if the
> child actually suffers from the limitations specified in the
> Listings for that child's severe impairment. A child's limitations
> "medically equal" the limitations in the Listings if the child's
> limitations "are at least of equal medical significance to those of
> a listed impairment."
>
> Finally, even if the limitations resulting from a child's particular
> impairment are not comparable to those specified in the Listings,
> the ALJ can still conclude that those limitations are
> "functionally equivalent" to those in the Listings. In making this
> determination, the ALJ assesses the degree to which the child's
> limitations interfere with the child's normal life activities. The
> C.F.R. specifies six major domains of life:
>
>> (i)  Acquiring and using information;
>> (ii) Attending and completing tasks;
>> (iii) Interacting and relating with others;
>> (iv) Moving about and manipulating objects;
>> (v)  Caring for [one]self; and
>> (vi) Health and physical well-being.
>
> The C.F.R. contains various "benchmarks" that children should

6

> have achieved by certain ages in each of these life domains. A
> child's impairment is "of listing-level severity," and so
> "functionally equals the listings," if as a result of the limitations
> stemming from that impairment the child has 'marked'
> limitations in two of the domains [above], or an 'extreme'
> limitation in one domain."

*Shinn ex rel. Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1279

(11th Cir. 2004) (internal citations omitted).

The new standard clearly is more stringent given Congress's decision,

as stated in the House conference report, to confine the definition of childhood

disability to the first three steps of the sequential evaluation process. *Hart ex*

*rel. Thomas v. Chater*, 963 F.Supp. 835, 839 (W.D.Mo. 1997). The report

reads in pertinent part as follows:

> "The conferees intend that only needy children with severe
> disabilities be eligible for SSI, and the Listing of Impairments
> and other current disability determination regulations as
> modified by these provisions properly reflect the severity of
> disability contemplated by the new statutory definition. . . . The
> conferees are also aware that SSA uses the term 'severe' to often
> mean 'other than minor' in an initial screening procedure for
> disability determination and in other places. The conferees,
> however, use the term 'severe' in its common sense meaning."

*Id*. (quoting 142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf.

Rep. No. 104-725 (July 30, 1996)); *see also* 20 C.F.R. § 416.924(a) (2004)

("We follow a set order to determine whether you are disabled. If you are

doing substantial gainful activity, we will determine that you are not disabled

7

and not review your claim further.  If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe.  If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further.  If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings.  If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled.  If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.").

Plaintiff contends that the ALJ committed the following errors: (1) he failed to properly develop the record; (2) he failed to properly consider the opinion of plaintiff's treating physician; and (3) he failed to properly consider the medical evidence of record. The first and third errors will be discussed together as explained below.

A.   **Failure to Develop the Record.**   In her first assignment of error, it is plaintiff's contention that in absence of the completion of a child's residual functional capacity (RFC) by a treating or consultative physician the ALJ did not have a fully and fairly developed record upon which to evaluate

8

plaintiff's "ability to function under the criteria described for the award of child's benefits under Social Security rules and regulations." (Doc. 12, at 6; *see also id*. at 7)[2] In other words, what plaintiff is contending is that for an ALJ's functional equivalence analysis to be sustainable the ALJ must obtain a child's RFC from a treating or consultative source.[3] The undersigned disagrees.

The Commissioner's regulations provide that in a child disability case all relevant information will be considered, whether from medical sources or non-medical sources, such as teachers. 20 C.F.R. § 416.924a(a) (2006). Teachers, in particular, are an important source of information about the effects of a child's impairments on her activities and how she functions "on a day-to-day basis." 20 CF.R. § 416.924a(a)(2)(iii). In this case, the ALJ's comprehensive functional equivalence analysis (Tr. 23-27) is supported not only by the lengthy teacher questionnaire completed by Cabria's English teacher (Tr. 71-79) but, as well, by the sequential evaluation form completed

---

[2]     Although plaintiff entitles her third assignment of error as the ALJ's failure to consider the medical evidence of record, a review of same reveals that what plaintiff is really arguing is that the ALJ's decision denying benefits in this case is not based upon substantial evidence because the ALJ failed to obtain a child's RFC from either a treating or consultative medical source. (Doc. 12, at 8-10) Therefore, these issues are considered together.

[3]     The plaintiff's report and recommendation cannot be read as making any argument that Cabria's possible complex partial epilepsy meets or equals a listed impairment.

by a non-examining reviewing physician (Tr. 119-124), school records (Tr. 91-92), and the medical evidence of record (Tr. 97-118 & 126-137). The foregoing constitutes substantial evidence that plaintiff's possible complex partial epilepsy is not functionally equivalent to a listed impairment and because plaintiff has not cited the undersigned to a regulation, ruling or case recognizing that an ALJ's functional equivalence analysis is only sustainable if based upon an RFC assessment completed by a treating or consultative source, her argument that the ALJ failed to properly develop the record need be rejected.

     **B.**    <u>**Treating Physician's Opinion.**</u>  Plaintiff's only other contention is that it was improper for the ALJ to find that plaintiff either had "no limitation" of functioning or a "less than marked" limitation of functioning in each of the six domains evaluated in light of the fact that Cabria's treating neurologist warned her about the potential side effects of her prescribed medication (Tr. 134) and advised her to avoid  driving or operating any dangerous motorized vehicles or machinery, to avoid heights and water when unsupervised and to obtain adequate sleep (Tr. 134 & 137). (Doc. 12, at 7-8) "Certainly, these limitations should translate to an impairment in Plaintiff's ability to move and manipulate objects, care for self, and health and physical

well being, as well as possibly impacting her acquisition and use of information, ability to tend to and complete tasks, and ability to interact and relate with others." (*Id*. at 8)

The Commissioner's regulations set forth six major domains of life:

> (i)  Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v)  Caring for [one]self; and
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1) (2006). A child's impairments will be found to functionally equal the listings if  they result in "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" 20 C .F.R. § 416.926a(a).

> (g)  *Acquiring and using information*. In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.
>
> .        .        .
>
> (2)  *Age group descriptors*
>
> .        .        .
>
> (v)  *Adolescents (age 12 to attainment of age 18)*.  In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily

living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

(3)    *Examples of limited functioning in acquiring and using information*.   The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i)    You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.

(ii)    You cannot rhyme words or the sounds in words.

(iii)    You have difficulty recalling important things you learned in school yesterday.

(iv)    You have difficulty solving mathematics questions or computing arithmetic answers.

(v)    You talk only in short, simple sentences and have

difficulty explaining what you mean.

(h)     *Attending and completing tasks*.  In this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them.

.     .     .

(2)     *Age group descriptors*

.     .     .

(v)     *Adolescents (age 12 to attainment of age 18)*. In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

(3)     *Examples of limited functioning in attending and completing tasks*. The following examples describe some limitations we may consider in this domain. . . .

(i)     You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.

(ii)     You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.

(iii)     You repeatedly become sidetracked from your activities or you frequently interrupt others.

13

(iv)    You are easily frustrated and give up on tasks, including ones you are capable of completing.

(v)    You require extra supervision to keep you engaged in an activity.

(i)    *Interacting and relating with others.*  In this domain, we consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.

.    .    .

(2)    *Age group descriptors*

.    .    .

(v)    *Adolescents (age 12 to attainment of age 18)*. By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

(3)    *Examples of limited functioning in interacting and relating with others*. The following examples describe some limitations we may consider in this domain. . . .

14

(i)      You do not reach out to be picked up and held by your caregiver.

(ii)      You have no close friends, or your friends are all older or younger than you.

(iii)      You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.

(iv)      You have difficulty playing games or sports with rules.

(v)      You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.

(vi)      You have difficulty speaking intelligibly or with adequate fluency.

(j)      *Moving about and manipulating objects*.  In this domain, we consider how you move your body from one place to another and how you move and manipulate things. These are called gross and fine motor skills.

.      .      .

(2)      *Age group descriptors*

(v)      *Adolescents (age 12 to attainment of age 18)*.  As an adolescent, you should be able to use your motor skills freely and easily to get about your school, the neighborhood, and the community. You should be able to participate in a full range of individual and group physical fitness activities. You should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard.

(3)    *Examples of limited functioning in moving about and manipulating objects.* The following examples describe some limitations we may consider in this domain. . . .

(i)    You experience muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with your motor activities (e.g., you unintentionally drop things).

(ii)    You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.

(iii)    You have difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike).

(iv)    You have difficulty with sequencing hand or finger movements.

(v)    You have difficulty with fine motor movement (e.g., gripping or grasping objects).

(vi)    You have poor eye-hand coordination when using a pencil or scissors.

(k)    *Caring for yourself.* In this domain, we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.

.    .    .

(2)    *Age group descriptors*

.    .    .

(v)    *Adolescents (age 12 to attainment of age 18)*. You should feel more independent from others and should be increasingly independent in all of your day-to-day activities. You may sometimes experience confusion in the way you feel about yourself. You should begin to notice significant changes in your body's development, and this can result in anxiety or worrying about yourself and your body. Sometimes these worries can make you feel angry or frustrated. You should begin to discover appropriate ways to express your feelings, both good and bad (e.g., keeping a diary to sort out angry feelings or listening to music to calm yourself down). You should begin to think seriously about your future plans, and what you will do when you finish school.

(3)    *Examples of limited functioning in caring for yourself*. The following examples describe some limitations we may consider in this domain. . . .

(i)    You continue to place non-nutritive or inedible objects in your mouth.

(ii)    You often use self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food), or you have restrictive or stereotyped mannerisms (e.g., body rocking, head banging).

(iii)    You do not dress or bathe yourself appropriately for your age because you have an impairment(s) that affects this domain.

(iv)    You engage in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or you ignore safety rules.

(v)    You do not spontaneously pursue enjoyable activities or interests.

17

(vi)   You have disturbance in eating or sleeping patterns.

(l)   *Health and physical well-being*.  In this domain, we consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section. When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause "extreme" limitation in your functioning, you will generally have an impairment(s) that "meets" or "medically equals" a listing.

.     .     .

(4)   *Examples of limitations in health and physical well-being*. The following examples describe some limitations we may consider in this domain. . . .

(i)   You have generalized symptoms such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina) or psychomotor retardation because of your impairment(s).

(ii)   You have somatic complaints related to your impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).

(iii)   You have limitations in your physical functioning because of your treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments).

(iv)   You have exacerbations from one impairment or a combination of impairments that interfere with your physical

functioning.

> (v)    You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R § 416.926a(g)-(l).

The undersigned has quoted at length from the Commissioner's regulations regarding the six domains because a comparison of same to the limitations noted by plaintiff's treating neurologist, which were specifically considered by the ALJ when analyzing the "moving and manipulating objects" domain (Tr. 25), clearly establishes that the instructions given by Dr. Hamilton (to avoid driving, etc.) do not translate into limited functioning in any one domain or several domains sufficient to establish functional equivalence.[4] In particular, even if this Court was to find that the ALJ erred in finding that Cabria had no limitation of functioning in the domain of moving and manipulating objects such error would be harmless as the limitations noted by Dr. Hamilton are clearly "less  than marked" when compared to the examples of limited functioning recognized in the Commissioner's regulations, *see* 20 C.F.R. § 416.926a(j)(3)(i)-(vi). Accordingly, the undersigned finds that any

_____

[4]    Specifically, a comparison of the contents of the regulations, *supra*, to Dr. Hamilton's limitations does not establish an "extreme" limitation in any one domain or a "marked" limitation in any two domains so as to establish functional equivalence.

error committed by the ALJ in his functional equivalence analysis was mere harmless error.

## <u>CONCLUSION</u>

Based upon the foregoing, it is recommended that the Commissioner's decision denying the application made on behalf of Cabria Rankins for child's insurance benefits be affirmed.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 4th day of August, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED   STATES   MAGISTRATE   JUDGE